UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT TURNER,<br><br>   Plaintiff,<br><br> v.<br><br>ANDREW ZEPP, et al.,<br><br>   Defendants. | Case No. 1:20-cv-00184-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT BE GRANTED<br><br>(ECF Nos. 72, 74, 105)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

   Plaintiff Vincent Turner ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court are two motions for summary judgment filed by Defendants Andrew Zepp and Khaled A. Tawansy ("Defendants"). (ECF Nos. 72, 74, 105.) The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the following reasons, the Court recommends that the motions be granted.

   **I. BACKGROUND**

   This case proceeds on Plaintiff's claims against Defendants for deliberate indifference to serious medical needs in violation of the Eighth Amendment. (ECF No. 15.) Plaintiff's complaint alleges that, following sinus surgery, Plaintiff told Defendant Zepp he was experiencing pain and needed to be seen right away. (ECF No. 1.) Plaintiff did not receive treatment for several days,

1

1  resulting in a significant infection, pain, swelling, permanent injury, and loss of facial bone. (*Id.*)

2  Defendant Tawansy filed his motion for summary judgment on October 28, 2021. (ECF

3  No. 72.) Defendant Tawansy argues that Plaintiff does not have evidence that there was a

4  deprivation of sufficient seriousness or that Defendant Tawansy acted with a sufficiently culpable

5  state of mind. (*Id.* at 10.) Instead, the evidence shows that Defendant Tawansy provided effective

6  and timely care. (*Id.*)

7  Defendant Zepp filed his motion for summary judgment on November 1, 2021. (ECF No.

8  74.) Defendant Zepp likewise argues that he provided all reasonable and necessary care for

9  Plaintiff's medical condition. (*Id.* at 7.) At most, Plaintiff's claim amounts to a difference of

10  medical opinion, which is not sufficient to establish deliberate indifference. (*Id.*)

11  On November 12, 2021, Plaintiff filed a document titled "Plaintiff Defense Against the

12  Summary Judgment." (ECF No. 78.) Because it was not clear whether this document was

13  responsive to either of Defendants' motions, the Court ordered Plaintiff to file oppositions or

14  statements of non-opposition to Defendants' motions for summary judgment within thirty days.

15  (ECF No. 82.) On January 3, 2022, Plaintiff filed two documents purporting to respond to

16  Defendants' motions for summary judgment. (ECF Nos. 91-92.) Plaintiff filed three more

17  documents on January 6, 2022. (ECF Nos. 93-95.) In these filings, Plaintiff generally argues that

18  he contacted Defendant Zepp on September 8 or 9, 2017, and requested medical treatment but did

19  not receive any for several days, causing Plaintiff to need several additional surgeries. (ECF Nos.

20  78, 91, 93-94.) According to Plaintiff, this failure to provide medical treatment amounted to

21  deliberate indifference. (*Id.*)

22  On March 8, 2022, the Court entered an order granting Plaintiff leave to file supplemental

23  briefing in opposition to Defendants' motions for summary judgment. (ECF No. 103.) On May 2,

24  2022, Plaintiff filed a response to Defendant Tawansy's Separate Statement of Undisputed Facts.

25  (ECF No. 104.)

26  On May 11, 2022, Defendant Tawansy filed a reply and objections to Plaintiff's response

27  his Separate Statement of Undisputed Facts. (ECF No. 105.) On May 17, 2022, Defendant Zepp

28  filed a reply in support of his motion for summary judgment, noting that Plaintiff's oppositions

2

solely addressed Defendant Tawansy's motions and did not contain any arguments referring to Defendant Zepp. (ECF No. 106.)

The matter was then taken under submission on the record without oral argument. *See* E.D. Cal. L.R. 230(l).

## II. UNDISPUTED FACTS

The Court has carefully reviewed the parties' submissions, including separate statements of undisputed facts, supporting declarations and documents, and statements in the parties' briefs. The following facts are undisputed.[1]

Plaintiff was housed at Kern Valley State Prison ("KVSP") during the events at issue in this case. (ECF Nos. 72-2 at 2, 74-1 at 1, 91 at 3, 104 at 2, 105 at 2.) Defendant Zepp was Plaintiff's primary care physician at KVSP and Defendant Tawansy is an ophthalmologist who treated Plaintiff. (ECF Nos. 72-2 at 2, 74-1 at 2, 104 at 2, 105 at 2.)

On August 9, 2017, Plaintiff complained of pressure in his left eye with swelling. (ECF No. 74-1 at 2.) Defendant Zepp performed a physical examination, sent Plaintiff to San Joaquin

---

[1] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment. This is particularly true when "the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Capital Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

The Court notes that Plaintiff did not file any response to Defendant Zepp's itemized Separate Statement of Undisputed Facts as required under the Local Rules. *See* E.D. Cal. L.R. 260(b). Further, Plaintiff's responses to Defendant Tawansy's Separate Statement of Undisputed Material Facts do not admit or deny each of the listed facts. (*See* ECF Nos. 99, 104.) Plaintiff did not respond to several of Defendant Tawansy's itemized facts at all, and many of his responses do not address the facts listed. (*Id.*) For example, in response to Defendant Tawansy's Undisputed Material Fact No. 9, which states, "Plaintiff's second visit with Tawansy took place on August 21, 2017 where Tawansy performed surgery on Plaintiff draining the mass and puncturing a sinus bone to allow sinus drainage," Plaintiff responds, "My second visit 8-21-17 so How Did My first visit take place April 10, what about the August 10, visit. That's on record where he states. He'll be doing surgery on 8-21-17 at his O.R." (ECF No. 104 at 3.) Defendants both provided Plaintiff with a *Rand* warning informing him of the summary judgment requirements of and of the Local Rules' directive that Plaintiff "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed[.]" (ECF No. 74-2 at 2; *see also* ECF No. 72-4 at 2.) Thus, the Court may properly take all facts set forth in Defendant Zepp's statement, as well as those facts in Defendant Tawansy's statement that Plaintiff did not respond to, as undisputed. However, Plaintiff attached evidence to his oppositions, and the operative complaint is verified. (*See* ECF Nos. 1, 78, 91, 93-95) *See Jones v. Blanas,* 393 F.3d 918, 922-23 (9th Cir. 2004) (noting that, where the plaintiff was proceeding *pro se,* the court was required to "consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct"). The Court has considered this evidence in determining whether the facts are undisputed and Defendants are entitled to summary judgment under the applicable legal standards.

Community Hospital for a CT scan, and prescribed antibiotic drops and pain medication. (*Id.*) Plaintiff received a CT scan on August 9, 2017, which showed an expansive mass coming from his left ethmoid sinus, and that part of the ethmoid bone was destroyed. (*Id.*) Plaintiff was scheduled to see Defendant Tawansy the next day. (*Id.*)

Plaintiff first visited Defendant Tawansy on August 10, 2017,[2] for an evaluation of his left eye. (ECF Nos. 72-2 at 2-3, 74-1 at 2, 104 at 3, 105 at 3.) Defendant Tawansy reviewed Plaintiff's CT scan and determined that there was an enlarging mass behind the left eye. (ECF Nos. 72-2 at 3, 104 at 3, 105 at 3-4.) Dr. Tawansy examined Plaintiff and scheduled him for a biopsy and excision of the mass. (ECF Nos. 72-2 at 3, 74-1 at 2, 104 at 3, 105 at 4.)

Defendant Zepp followed up with Plaintiff on August 11, 2017, and Plaintiff complained of swelling in his eyes. (ECF No. 74-1 at 2.) Defendant Zepp confirmed the scheduled biopsy with Defendant Tawansy as well as Plaintiff's prescription for antibiotic drops and pain medication. (*Id.*)

Plaintiff again visited Defendant Tawansy on August 21, 2017, for surgery draining the mass and puncturing a sinus bone to allow sinus draining. (ECF Nos. 72-2 at 3-4, 74-1 at 2, 104 at 3-4, 105 at 4-5.) There were no complications during the surgery, Plaintiff reported immediate relief of symptoms, and Plaintiff was started on double oral antibiotic coverage, as well as topical antibiotics. (ECF Nos. 72-2 at 4, 74-1 at 2, 104 at 4, 105 at 5.)

Plaintiff's third visit with Defendant Tawansy occurred on August 23, 2017. (ECF Nos. 72-2 at 4, 74-1 at 2, 104 at 4, 105 at 5-6.) Plaintiff had a follow-up exam and was doing well. (ECF Nos. 72-2 at 4, 104 at 4, 105 at 6.)

On August 25, 2017, Plaintiff followed up with Defendant Zepp. (ECF No. 74-1 at 2.) Plaintiff reported that he was still in significant pain. (*Id.*) Defendant Zepp prescribed methadone 5mg twice per day, confirmed his other medications, and ordered him to follow up with Defendant Tawansy as directed. (*Id.*)

---

[2] Defendant Tawansy's Separate Statement of Undisputed Material Facts states that Plaintiff's first visit occurred on April 10, 2017. (ECF No. 72-2.) Plaintiff's response disputes this and contends that his first visit occurred on August 10, 2017. (ECF No. 104.) In his reply, Defendant Tawansy clarified that the April 10 date was a typo and concedes that Plaintiff's first visit occurred on August 10, 2017. (ECF No. 105.) Accordingly, the date of Plaintiff's first visit with Defendant Tawansy is undisputed.

Plaintiff had his fourth visit with Defendant Tawansy on September 6, 2017, for another follow-up examination. (ECF Nos. 72-1 at 4-5, 104 at 4-5, 105 at 6.) Plaintiff told Defendant Tawansy that "it's coming back" and Defendant Tawansy told him he had pain due to healing. (ECF Nos. 104 at 5, 105 at 6.)

Plaintiff was seen by Dr. Sao at the KVSP triage center on September 11, 2017. (ECF Nos. 72-2 at 7, 74-1 at 3, 104 at 7, 105 at 13.) Plaintiff reported that he had started having pain, redness, and tearing the previous day. (ECF No. 74-1 at 3.) Plaintiff was sent to San Joaquin Community Hospital Emergency Room and a CT scan was performed that evening. (ECF Nos. 72-2 at 7, 74-1 at 3, 104 at 7, 105 at 13.) The ER doctor noted that there was inflammatory tissue, prescribed Plaintiff seven days of clindamycin, and instructed Plaintiff to see Defendant Tawansy in one-to-two days. (*Id.*) Defendant Tawansy received a call from the ER on the night of September 11, 2017, and he informed the ER doctor of the biopsy findings. (ECF Nos. 72-2 at 7-8, 104 at 7-8, 105 at 14.) The ER did not ask Defendant Tawansy to go to the hospital and Plaintiff was returned to KVSP. (ECF Nos. 72-2 at 8, 74-1 at 3, 104 at 8, 105 at 14-15.)

Plaintiff visited Defendant Zepp on September 12, 2017, and complained of pain and swelling. (ECF Nos. 72-2 at 8, 74-1 at 3, at 104 at 8, 105 at 15.) Defendant Zepp called Defendant Tawansy,[3] who asked to see Plaintiff. (ECF Nos. 72-2 at 8, 74-1 at 3, 104 at 8, 105 at 15-16.) Defendant Zepp contacted the scheduling nurse to schedule a visit for Plaintiff with Defendant Tawansy for September 13, 2017, and confirmed Plaintiff's prescriptions for pain medication and antibiotics. (ECF No. 74-1 at 3.)

Plaintiff's fifth and final visit with Defendant Tawansy occurred on September 13, 2017. (ECF Nos. 72-2 at 8, 74-1 at 3, 104 at 8, 106 at 16.) Plaintiff had swelling of the conjunctiva and recurrent inflammation and proptosis. (ECF No. 72-2 at 9, 104 at 9, 105 at 16-17.) Defendant Tawansy recommended that Plaintiff be admitted to the hospital, have intravenous antibiotic therapy, and receive a consultation for possible surgery to excise the ethmoid and frontal sinuses. (ECF Nos. 72-2 at 9, 74-1 at 3, 104 at 9, 105 at 17-18.)

---

[3] It is undisputed that Defendant Zepp called Defendant Tawansy, who asked to see Plaintiff. Plaintiff contends that this call occurred on September 8 or 9, 2017, while Defendants contend it occurred on September 12, 2017. (*See* ECF Nos. 72-2 at 8, 74-1 at 3, 104.)

Plaintiff was transported to San Joaquin Community Hospital that day as a direct admit to the Ear, Nose & Throat service for treatment. (ECF No. 74-1 at 3.) The ENT doctor on duty indicated that the necessary treatment was beyond the scope of what could be provided at their facility and sent Plaintiff to Riverside University Health System. (*Id.*) Plaintiff was admitted to Riverside University Health System from September 13, 2017 until September 20, 2017, when he was discharged back to KVSP. (*Id.*)

Defendant Tawansy made a follow-up appointment for Plaintiff for September 20, 2017, but Plaintiff did not return to see him. (ECF Nos. 72-2 at 9, 104 at 9, 105 at 18.) Plaintiff followed up with Defendant Zepp on September 22 and 28, 2017, and with the ENT at Riverside University Health System on September 26 and 29, 2017. (ECF No. 74-1 at 3-4.) Plaintiff's sinus issue was resolved after two additional surgeries, one on September 18, 2017, and another on March 6, 2018. (ECF Nos. 72-2 at 11, 104 at 11, 105 at 22.)

### III.    LEGAL STANDARDS

#### A.    Summary Judgment Generally

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322.

Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 252.

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn . . . ."; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed . . . .." *Anderson*, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

**B.     Deliberate Indifference to Serious Medical Needs**

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832

7

(1994) (citation omitted). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832–33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citation omitted).

A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. *See Farmer,* 511 U.S. at 834.

For the objective component, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

For the subjective component, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and...must also draw the inference." *Id.* Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847; *see also id.* at 835, 36-37 (explaining that "deliberate indifference entails something more than mere negligence...[but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result"; and defining "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware").

### IV.   ANALYSIS

Defendants both argue that they are entitled to summary judgment because Plaintiff received effective and reasonable care for his medical condition and there is no evidence of subjective deliberate indifference. (ECF No. 72 at 9-10, 74 at 7-9.) In support of this argument, Defendants provide declarations regarding the treatment they provided to Plaintiff as well as

8

1    medical records documenting that treatment. (*See* ECF Nos. 72-3, 74-3, 75.)

2    Defendant Tawansy explains that he evaluated Plaintiff on August 10, 2017, performed

3    surgery on August 21, 2017, and had follow up visits with Plaintiff on August 23, 2017, and

4    September 6, 2017. (ECF No. 72-3 at 44-45.) Plaintiff went to the emergency room on September

5    11, 2017, and Defendant Tawansy was contacted and discussed the case with the emergency

6    physician, but was not asked to come to the hospital to evaluate Plaintiff. (*Id.* at 45-47.)

7    According to Defendant Tawansy, Plaintiff was not in a medical or surgical emergency at that

8    time. (*Id*. at 47.) Plaintiff's next visit with Defendant Tawansy was on September 13, 2017. (*Id.* at

9    10.) During that visit, Defendant Tawansy referred Plaintiff to a medical specialist, who

10   performed surgery on Plaintiff on September 18, 2017. (*Id.*)

11   As to Defendant Zepp, he declares that he first treated Plaintiff on August 9, 2017, for

12   complaints of pressure in the left eye. (ECF No. 74-3 at 14.) Defendant Zepp referred Plaintiff to

13   San Joaquin Community Hospital for a CT scan and prescribed antibiotic drops and pain

14   medication for his eyes. (*Id.* at 14-15.) Defendant Zepp followed up with Plaintiff on August 11,

15   2017 and confirmed his prescriptions and the scheduled biopsy. (*Id.*) Defendant Zepp also

16   followed up with Plaintiff after his surgery on August 25, 2017, prescribed pain medication,

17   confirmed Plaintiff's other medications, and ordered him to follow up with Defendant Tawansy

18   as directed. (*Id.*) Plaintiff was seen at the KVSP triage center on September 11, 2017, and sent to

19   the San Joaquin Community Hospital Emergency Room for a CT scan. (*Id.*) Plaintiff followed up

20   with Defendant Zepp again on September 12, 2017, with reports of pain and increased swelling.

21   (*Id.* at 16.) Defendant Zepp called Defendant Tawansy to expedite Plaintiff's next appointment.

22   (*Id.*) Defendant Tawansy asked to see Plaintiff the following morning, so Defendant Zepp

23   contacted the scheduling nurse and further confirmed Plaintiff's prescriptions for pain

24   medications and antibiotics. (*Id.*)

25   The Court finds that Defendants have met their initial burden at summary judgment of

26   showing undisputed facts upon which no reasonable jury could find that Defendants knew of and

27   disregarded an excessive risk to Plaintiff's health or safety in the course of their evaluation and

28   treatment of Plaintiff. Defendants have pointed to the absence of evidence of their subjective

9

deliberate indifference, which is an essential element of Plaintiff's claims against them. The burden therefore shifts to Plaintiff as the non-moving party to put forth evidence that a reasonable jury could rely on to find Defendants were subjectively deliberately indifferent in their treatment of Plaintiff's condition.

In his oppositions, Plaintiff argues that, on either September 8 or 9, 2017, he followed up with Defendant Zepp and reported that his condition was getting worse. (ECF Nos. 78 at 2.) Defendant Zepp gave him an ice pack and sent him back to the yard without giving him medical treatment. (*Id.* at 1, 3.) Defendant Zepp also spoke to Defendant Tawansy, making him aware of his condition. (ECF No. 93 at 1.) However, Plaintiff was not seen by Defendant Tawansy until September 13, 2017. (*Id.*)

Plaintiff does not submit a declaration or other statement under penalty of perjury in support of his opposition regarding his conversation with Defendant Zepp on September 8 or 9, 2017. However, Plaintiff's complaint is signed under penalty of perjury and states that he reported experiencing pain to Defendant Zepp on September 9, 2017, but did not receive treatment. (ECF No. 1.)[4]

Construing the evidence liberally in Plaintiff's favor, the Court finds that there is no genuine dispute of material fact precluding summary judgment. The undisputed evidence shows that the Defendants repeatedly evaluated Plaintiff, provided him with medications, ordered testing, performed surgery, and referred him to specialists. Plaintiff alleges that he reported pain and a worsening condition on September 8 or 9, 2017, but did not see Defendant Tawansy until September 13, 2017. However, even when accepted as true and construed in the light most favorable to Plaintiff, these facts do not show that Defendants acted in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff concedes that Defendant Zepp provided an ice pack when he reported pain, and it is also undisputed that Plaintiff received medical care and testing on

---

[4] Plaintiff's opposition cites to a "Refusal of Examination And/Or Treatment" form dated September 8, 2017 to "prove [Plaintiff] saw Doctor Andrew Zepp on the Date of 9-8-2017." (ECF No. 78 at 3, 9.) However, this form does not refer to Defendant Zepp or indicate that Plaintiff saw or spoke to him that day. Instead, the form documents Plaintiff's refusal of treatment for a latent TB infection and is signed by P. Rodriguez, RN. (ECF No. 78 at 9-10.) Plaintiff also refers to progress notes where Defendant Zepp describes giving Plaintiff an ice pack for comfort, but these progress notes are dated August 25, 2017, not September 8, 2017, which is consistent with Defendant Zepp's report that he had a follow-up appointment with Plaintiff on August 25, 2017. (ECF No. 78 at 16.)

September 11, 2017, when he visited the KVSP triage center and was sent to the emergency room. (ECF No. 104.) Plaintiff saw Defendant Zepp the next day, and Defendant Tawansy the day after. Plaintiff was then admitted to the hospital at Defendant Tawansy's recommendation. Plaintiff does not describe anything about his interactions with either Defendant or their reactions to his reports of pain and worsening condition that would indicate Defendants knew Plaintiff would be harmed at all if he did not see Defendant Tawansy the same day, much less that they disregarded a substantial risk of serious harm.

Plaintiff's allegation of a two-to-three-day delay in treatment is not sufficient for a reasonable jury to find that either Defendant acted deliberate indifference to serious medical needs, rather than negligence. *Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Although Plaintiff may have preferred to see Defendant Tawansy the same day he says that he spoke to Defendant Zepp, Plaintiff has not submitted any evidence that the course of treatment Defendants provided was medically unacceptable under the circumstances. Further, neither a difference of opinion between medical providers nor Plaintiff's disagreement regarding the proper course of treatment constitute deliberate indifference. *Toguchi v. Chung,* 391 F.3d 1051, 1059-60 (9th Cir. 2004) ("[A] difference of medical opinion . . . cannot support a claim of deliberate indifference."); *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989) (reasoning that a difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim).[5]

---

[5] Plaintiff's opposition also contends that Defendants are doctoring documents. (ECF Nos. 78, 92.) For example, on a medical record from Riverside University Health System, Plaintiff includes a handwritten note stating "K.V.S.P. This is Evidence their changing Dates to make it fit their stories. Dates can be changed but not names." (ECF No. 78 at 7.) On another progress note, Plaintiff states, "copy these pages it clearly shows that their fixing Documents to fit whatever they want it to say. Dates been changed like I stated from the begin and their getting away with it. Here's 'Evidence' their sayin the same Doctor from tri-city. He's signed off on this case in Riverside." (ECF No. 78 at 19.) Plaintiff does not explain what dates were changed, how the documents "show" that any dates were changed, or how any changes would be material. Having reviewed the documents at issue, there is nothing on their face indicating that Defendants tampered with their contents, and Plaintiff has not adequately explained why he believes they are "doctored." As Plaintiff's arguments are conclusory and unsupported, the Court finds that they are insufficient to preclude summary judgment. *See In re Oracle Corp. Securities Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) ("The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue.") (quoting *Matsushita,* 475 U.S. at 586).

Because Plaintiff has not submitted sufficient evidence from which a reasonable jury could find that Defendants were subjectively deliberate indifferent in evaluating and treating Plaintiff's left eye, the Court recommends granting Defendants' motions for summary judgment.[6]

### V.     CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motions for summary judgment (ECF Nos. 72, 74) be granted;

2. Judgment be entered in favor of Defendants Khaled A. Tawansy and Andrew Zepp; and

3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 27, 2022**                     /s/ *Erica P. Grosjean*
                                               UNITED STATES MAGISTRATE JUDGE

---

[6] In light of this recommendation, the Court declines to address the remainder of Defendants' arguments, including that Plaintiff does not have evidence that there was a deprivation of sufficient seriousness.